UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN FRANCIS STRUBLE

        Plaintiff,

  v.

LOUIS TRIPOLI, et al.,

        Defendants.

Civil Action
No. 06-1589(NLH)

**OPINION**

**APPEARANCES**:

THOMAS F. GALLAGHER
COZEN & O'CONNOR
LIBERTY VIEW
457 HADDONFIELD ROAD
SUITE 300
CHERRY HILL, NJ 08002
*Attorney for Plaintiff*

JEFFREY M. SCOTT
KERRI E. CHEWNING
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968
*Attorney for Defendants Louis Tripoli, William Andrade, C. Mayo, Doctor Hoey*

SARAH BRIE CAMPBELL
OFFICE OF NJ ATTORNEY GENERAL
RICHARD J. HUGHES JUSTICE COMPLEX
PO BOX 112
TRENTON, NJ 08625
*Attorneys for Kathryn McFarland, Howard Beyer (incorrectly named as Howard Byer)*

**HILLMAN, District Judge**

    Plaintiff filed an action pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief and monetary damages against defendants for their alleged deliberate indifference to

his serious medical needs in violation of the 8th Amendment. Plaintiff has withdrawn his motion for injunctive and declaratory relief on the basis that he has received treatment for his HCV and, therefore, we only address his claims for monetary relief. Now before the Court is defendants Kathryn McFarland's and Howard Beyer's motion to dismiss, or in the alternative, for summary judgment.  Beyer argues he should be dismissed because he was not employed by the Department of Corrections during the requisite time period and had no personal involvement with the plaintiff. MaFarland argues that she should be dismissed because she is immune in her in official capacity as an employee of the State and in her individual capacity because she is non-medical prison official.  For reasons explained below, defendants' motion is granted.

## I.   JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) over plaintiff's claim brought pursuant to 42 U.S.C. § 1983.

## II.   BACKGROUND

Plaintiff John Struble is an inmate currently incarcerated at South Woods State Prison in New Jersey.  On November 4, 2003, plaintiff requested an office visit with a nurse to discuss potential exposure to the Hepatitis C Virus ("HCV") from activity that occurred eight to ten years prior.  Plaintiff was referred

to a Correctional Medical Services ("CMS")[1] nurse practitioner who placed an order to screen plaintiff for HCV.

On December 11, 2003, plaintiff tested positive for HCV and was added to the roster for the infectious disease chronic care clinic.  On December 22, 2003, plaintiff was advised of his condition and provided education on the disease.

On December 29, 2003, plaintiff had blood drawn for lab tests to determine treatment options.  On January 11, 2004, plaintiff received an injection for hepatitis A immunization.  On January 15, 2004, plaintiff was seen in the chronic care clinic in which he advised medical personnel that he wanted to go forward with treatment, and on January 19, 2004, further lab tests were drawn.

On February 23, 2004, plaintiff was seen in the chronic care clinic and was told that he "may have spontaneously cleared the virus" and was scheduled to be evaluated in six months.  On April 30, 2004, plaintiff requested to see a nurse to discuss his lab reports.  CMS responded that plaintiff had been evaluated on February 23, 2004, and that he was scheduled to be reevaluated in six months.  On August 25, 2004, lab work was performed and plaintiff again tested positive for HCV.  On September 3, 2004, plaintiff was given the second shot for the hepatitis A

---

[1]  NJDOC contracts with CMS to provide medical personnel who treat the inmates.

vaccination.

On October 10, 2004, plaintiff submitted a NJDOC inmate request form complaining that no follow-up occurred regarding his HCV testing. The response he received was that all required tests were completed and plaintiff was scheduled for the chronic care clinic on November 2, 2004.

On November 2, 2004, plaintiff was evaluated in the chronic care clinic wherein it was noted that plaintiff's HCV was "stable" and that "he will not need HCV [medications]." Plaintiff underwent lab work on November 10, 2004, and was seen again in the chronic care unit on November 30, 2004. Although follow-up lab tests were ordered, the CMS doctor noted that HCV medication was not yet appropriate and to continue monitoring plaintiff's condition. Further laboratory tests were performed on December 8, 2004.

On February 16, 2005, plaintiff was seen in the chronic care clinic. Plaintiff states that his medical records showed that his viral count was 4900 which necessitated medical treatment for his condition. On February 21, 2005, laboratory tests were performed, and on February 28, 2005, medial personnel cleared plaintiff for treatment.[2] On June 8, 2005, plaintiff's HCV genotype was drawn.

---

[2] The parties state that an optometrist cleared plaintiff for treatment. There is no explanation as to why clearance from an optometrist was needed.

4

On June 15, 2005, plaintiff was seen in the chronic care clinic. Defendants maintain that at that time plaintiff's condition was stable and that he was not seeking HCV treatment. Plaintiff denies that he was not seeking treatment and argues that he has consistently sought treatment for his HCV.

On August 22, 2005, plaintiff submitted a form requesting treatment for HCV and copies of his medical records. The response from CMS was that plaintiff was scheduled to be seen in the chronic care clinic on September 22, 2005 and that his most recent medical records indicated that he was not seeking HCV treatment. CMS also responded that plaintiff had not received mental health clearance because he missed two appointments and that the his prison account lacked funds to pay for the copies of the medical records. Plaintiff denies that he was scheduled for mental health appointments or that he was not seeking HCV treatment.

On August 29, 2005, plaintiff submitted a NJDOC request system and remedy form in which he put "all pertinent parties" on notice that he had not received treatment for his HCV despite having requested such treatment. On September 20, 2005, plaintiff was seen in the chronic care clinic wherein the CMS nurse stated that plaintiff needed mental health clearance and an electrocardiogram ("EKG") before he could begin HCV treatment. Although defendants state that plaintiff was told he may not be a

candidate for HCV treatment considering his lab results, plaintiff denies this and maintains that he was previously diagnosed with high levels of HCV necessitating treatment.

Follow-up lab work was performed on September 23, 2005, and on September 27, 2005, plaintiff was given an EKG.  On November 18, 2005, plaintiff received mental health clearance and a liver biopsy was ordered.  Plaintiff underwent the liver biopsy on December 15, 2005, at St. Francis Medical Center.  Plaintiff was treated in the chronic care clinic on December 23, 2005, and was examined by the CMS doctor on December 30, 2005 who referred him to an infectious disease specialist.  On January 23, 2006, plaintiff's test results indicated that he may be positive for hepatitis B.  He was re-tested on February 20, 2006.

On January 30, 2006, plaintiff sent a letter to Kathryn MacFarland, Administrator of South Woods Prison, advising her that he had "exhausted" his efforts to receive HCV treatment.  He also enclosed "106 pages of Inmate Request, Remedy, letters, labs reports from several sources, treatment plan, Diary dates and times, the list is extensive." (sic).  The letter also states he was advised by different doctors that he would be given "interferone" and requested MacFarland's assistance with this treatment plan.

On February 24, 2006, plaintiff submitted a form to the CMS ombudsman requesting interferon treatment.  CMS responded that

plaintiff was consulted regarding his treatment and that further testing was necessary to determine whether treatment was appropriate.

On March 17, 2006, plaintiff was seen in the chronic care clinic.  Defendants state that the CMS doctor advised plaintiff that he had hepatitis B and C, which could complicate treatment options.  Plaintiff states that he was not told that he had hepatitis B or that treatment options could be complicated.  On March 31, 2006, CMS contacted a specialist who recommended beginning the HCV treatment.

On April 21, 2006, plaintiff was treated in the chronic care clinic and medication for HCV treatment was ordered.  Plaintiff was first given medication for treatment of his HCV with an injection of Pegasys on April 27, 2006.  Plaintiff was seen the next day in the chronic care clinic and was also seen by the CMS ombudsman to discuss his treatment.  Plaintiff received additional shots of Pegasys on May 11, 18, 25, June 8, 15, 30, July 6, 13, 20, 27, August 3, 10, 18, 24, 31 and September 7, 2006.  Plaintiff was also seen in the chronic care clinic and lab tests were performed to monitor his treatment during this time.

Plaintiff filed a complaint alleging that defendants were deliberately indifferent to his serious medical needs in violation of the 8th Amendment.  Defendants Howard Beyer and Kathryn MacFarland, (collectively the "State defendants") filed a

7

motion to dismiss, or in the alternative, for summary judgment which is now before the Court.  Since affidavits were considered in deciding this motion, the motion is converted to a motion for summary judgment.  See Clay v. Department of Army, 239 Fed.Appx. 705, 706 (3d Cir. 2007).

### III.  DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino

8

v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Howard Beyer**

The State defendants argue that Howard Beyer should be dismissed because he was not employed by the Department of Corrections ("DOC") during the requisite time period, between 2003 and 2006, and was not employed by the DOC at anytime during plaintiff's incarceration.  They also argue that Beyer was never employed as the Commissioner for the DOC but rather was last employed in 1999 as an assistant commissioner for the DOC's division of operations.  They further argue that Beyer never had any personal involvement with the plaintiff who was incarcerated

9

two years after Beyer left the DOC's employment.

Plaintiff states that he has no opposition to the motion on behalf of Howard Beyer since he "cannot establish a genuine issue of material fact regarding Howard Beyer's employment as the commissioner of the NJDOC during the time that plaintiff has been incarcerated."  Thus, defendant Howard Beyer is dismissed.

**C.  Kathryn MacFarland**

**1.  Official Capacity**

The State defendants argue that claims against defendant Kathryn MacFarland in her official capacity should be dismissed because she is not a "person" within the meaning of 42 U.S.C. § 1983.

The law is clear that claims made against state officials in their official capacities are treated as claims made against the state itself.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  The Eleventh Amendment bars suits in Federal courts against states, and this immunity applies to § 1983 claims.  Anderson v. Pennsylvania, 196 Fed.Appx. 115, 117 (3d Cir. 2006)(citing Bolden v. SEPTA, 953 F.2d 807, 813 (3d Cir. 1991)).  Since a suit against a state official in her official capacity is not a suit against the official but rather is a suit against the state, and a state is not a person within the meaning of § 1983, Will, 491 U.S. at 71, plaintiff's claims against defendant Kathryn MacFarland in her official capacity are

dismissed.

## 2. Individual Capacity

The State defendants argue that plaintiff's claim for deliberate indifference to his serious medical needs against defendant MacFarland should be dismissed because she is a non-medical prison official and because plaintiff was under the care of medical professionals.  Plaintiff argues that MacFarland had personal knowledge of his efforts to receive medical attention because he sent a letter to her advising her that he had exhausted all his efforts for treatment by the prison's medical department.  Plaintiff states that he submitted 106 pages of inmate requests and other documentation to MacFarland's office along with his letter but that no treatment was provided to plaintiff until he filed this lawsuit.

As a non-medical prison official, the issue is whether MacFarland had a reason to believe, or actual knowledge, that the prison doctors were mistreating, or failed to treat plaintiff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (finding that without knowledge or belief that prison doctors are mistreating or not treating a prisoner, a non-medical prison official is not chargeable with the Eighth Amendment scienter requirement of deliberate indifference).

In Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), the Third Circuit found that the warden and the state commissioner

11

for corrections were not liable under § 1983 for failing to respond to letters plaintiff sent to them explaining his predicament.  The Third Circuit held that neither defendant was a physician, and neither defendant could be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Id.

In Spruill, the Third Circuit held that a non-medical prison official was not liable to plaintiff for deliberate indifference to his serious medical needs.  372 F.3d at 236 (affirming lower court's grant of motion to dismiss plaintiff's 42 U.S.C. § 1983 claim against non-medical prison official, but remanding as to claims against doctors).  In Sprill, the Third Circuit found that if a prisoner is under the care of medical experts, then "... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  Id.  The Third Circuit reasoned that:

> Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

Id.

12

Finally, in Thomas v. Dragovich, 142 Fed.Appx. 33, 39 (3d Cir. 2005), the Third Circuit acknowledged that the non-medical official "... could have been more helpful to Thomas by undertaking such actions as forwarding some of Thomas' grievance forms to the medical staff or doctors, or even speaking with them directly, to make sure Thomas was heard" but that "... a failure to undertake such actions or others like them does not constitute deliberate indifference, and may not be legally recognized as such."

Here, the only direct claim against MacFarland is that on January 30, 2006, plaintiff sent her a letter stating that he had exhausted his efforts to be properly treated and enclosed "106 pages of Inmate Request, Remedy, letters, labs reports from several sources, treatment plan, Diary dates and times" (sic). The letter also states he was advised by different doctors that he would be given "interferone" and requested MacFarland's assistance with this treatment plan.

It is undisputed that plaintiff was being seen by the CMS medical staff concerning his HCV which would justify a belief by MacFarland that plaintiff was in capable hands. See Sprill, 372 F.3d at 236. Further, in his letter to MacFarland, plaintiff states that he had been advised by different doctors indicating that he was being treated by medical personnel. The letter also enclosed 106 pages of documents, including "lab reports" and a

13

"treatment plan," indicating that plaintiff was receiving treatment.  Finally, his request to MacFarland to assist him receiving a certain drug suggests that he disagreed with the course of treatment, and disagreement with a particular course of treatment is not grounds for a deliberate indifference to serious medical needs claim.  See Dragovich, 142 Fed.Appx. at 36 (citing Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)(citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir. 1976)(per curiam)).[3]

Thus, there is nothing in plaintiff's letter that would give MacFarland a reason to believe, or actual knowledge, that the prison doctors were mistreating, or had failed to treat plaintiff.  See Thomas, 142 Fed.Appx. at 39 (finding that exhibits confirmed non-medical official's belief that plaintiff was under care of prison doctor and medical staff, placing her within the scope of decision in Spruill, 372 F.3d at 236).  Accordingly, the claims against MacFarland in her individual capacity are also dismissed.

---

[3]  This Opinion does not address whether the remaining defendants were deliberately indifferent to plaintiff's serious medical needs, an issue not joined by the motion presently before the Court.  We only hold here that there was no reason for MacFarland to believe based upon the letter sent to her by plaintiff that he was being mistreated or not being treated at all.

**IV.  CONCLUSION**

For the foregoing reasons, defendants Howard Beyer's and Kathryn McFarland's motion for summary judgment is granted and plaintiff's claims against them are dismissed.  An Order consistent with this Opinion will be entered.

                                  s/Noel L. Hillman
                                NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: May 22, 2008